ST. LOUIS-SAN FRANCISO RY. CO. v. CRAIG COUNTY EXCISE BOARD.

No. 35005.   May 1, 1951.

230 P. 2d 896.

Satterfield, Franklin & Harmon, Oklahoma City, for plaintiff in error.

John Q. Adams, County Atty., Craig County, Vinita, for defendant in error.

WELCH, J. St. Louis-San Francisco Railway Company, a corporation, owner of property in Independent School District No. 1 of Craig County, has appealed from a judgment denying its protest against one mill of a 21-mill tax levy certified to and approved by the Craig county excise board as necessary in the financing of the general fund appropriations of the said school district.

An election was held in the said school district wherein the majority of the voters voted for an excess levy for school purposes in the amount of 15 mills. The county excise board certified to a millage apportionment as follows:

"To school districts whose net valuation (homesteads excluded) are from $1,075,000 to $1,090,000—the division is:

| | |
|---|---|
| To schools | 6 mills |
| To Cities and Towns | None |
| To County | 9 mills |

To all other school districts the division is:

| | |
|---|---|
| To Schools | 5 mills |
| To Cities and Towns | 1 mill |
| To County | 9 mills." |

After said election and apportionment a 21-mill levy for general fund purpose of Independent School District No. 1 was certified for extention to the tax rolls. The assessed valuation of property in Independent School District No. 1 is within the valuation range above set forth, and said district is the only district in Craig county with valuation in such range.

Protestants here contend that by reason of an Act of the Legislature in 1949, the school district here involved, by its election, limited the millage which could be lawfully assessed for school purposes within such district to 20 mills.

Article 10, sec. 9 of the Constitution, provides:

"Except as herein otherwise provided, the total taxes for all purposes, on an ad valorem basis, shall not exceed, in any taxable year, fifteen (15) mills on the dollar, to be apportioned between county, city, town and school district, by the County Excise Board, until such time as the regular apportionment is otherwise provided for by the Legislature. . . .

" . . . the annual ad valorem tax rate for school purposes may be increased, in any school district, by an amount not to exceed fifteen (15) mills on the dollar valuation, upon all property in the district, on condition that a majority of the qualified voters of such district voting at an election, vote for such increase, provided, however, that the Legislature shall by proper laws prescribe the manner and method of conducting said election, but until such legislative provision is made, said levy may be made and said election held as now provided by law; and provided further, that limitations on the levy of such additional 15-mill levy may be made hereafter by the Legislature."

By act of the Legislature in 1949 there was apportionment to the school districts of the state 5 mills out of the 15 mills authorized for all purposes by section 9, art. 10, of the Constitution. The act expressly provides that such apportionment as made by the Legislature shall not prevent or take away from the county excise boards the right to apportion more than 5 mills to any school district. Title 70, chap. A, article 4, S. L. 1949, §39; 70 O. S. Supp. 1949 §4-39.

Section 40 of said article 4 of the 1949 Act, 70 O. S. Supp. 1949 §4-40, provides:

"Not later than the First (1st) day of March of each year the board of

education of each school district shall prepare an estimate of the amount of money which will be required to be raised by ad valorem taxation for the support and maintenance of the schools of such district for the ensuing fiscal year. If the assessed valuation of school district for the current fiscal year is not sufficient by a levy of five (5) mills to create a fund sufficient for the support of the schools in such district for the ensuing fiscal year, as determined by such estimate, the board of education shall determine the amount of an excess levy above the five (5) mills which shall be required to raise the amount, based upon the assessed valuation of the school district for the current fiscal year, needed for the support and maintenance of the schools of such district for the ensuing fiscal year. . . .

"At the same time that such estimate is published the board of education may issue a call for an election to vote upon the amount of excess levy estimated by the board of education to be needed to finance the needs of the school district for the ensuing fiscal year. Such election shall be held on the Fourth (4th) Tuesday in March following at the same time the general school district election is held, and shall be conducted by the officials conducting such general school district election. The publication shall contain the number of mills, in excess of five (5) mills to be voted upon. Provided the county excise board or the board of education of the school district may call a special election for the purpose of voting upon an excess levy in any school district if the estimate of needs as submitted by law requires a greater levy than authorized by law within the limitations fixed by the Constitution of Oklahoma."

Protestant asserts that section 40 is a legislative provision for a limitation upon the right of the taxing authorities to levy an amount in excess of a 15-mill levy over and above the 5 mills which is allocated by section 39. For such construction protestant refers to language in the act designating 5 mills as the basic factor in the determination of the extent of the increase in millage requirements for maintenance of the school for the ensuing year, and as designating 5 mills as the basic factor in presentment of the question of the amount of excess levy to be voted on. It is suggested that the election contemplated by section 40 must be held prior to the meeting of the county excise board when the 15 mills for all purposes may be apportioned between municipalities, and at a time when under section 39 there exists a legislative apportionment of 5 mills to school districts, and that the necessary effect in approval of excess levy is approval of total levy of 5 mills and the excess mills voted; that in such effect it was the intent and purpose of the Legislature in enactment of section 40 to limit the levy for school purposes to 5 mills and such increased millage above 5 mills as is voted, and since in the Constitution a voted additional levy is limited to 15 mills, that it was the intent of the Legislature in all events to limit the levy for school purposes to 20 mills.

Sections 39 and 40 were enacted by the Legislature with notice of the constitutional provisions, supra, limiting tax levy and authorizing the Legislature to further limit levy of taxes for school purposes. These sections contain no language in express terms limiting the tax levy for school purposes, but provide a method and manner by which levies for school purposes may be made to the full extent of the limits authorized in the Constitution. In section 39 with apportionment of 5 mills to schools it is provided such apportionment shall not limit the county excise board in further apportionment of millage to the school districts from the 15 mills to be apportioned between all municipalities. Under the terms of section 40 the voters of a school district may vote to approve any increase in levy above 5 mills as is estimated by the school board as needed for school purposes. In the terms of the statute there is no inhibition on the taxing authorities from extending such increase in levy to the tax rolls. The inhibition

arises from the constitutional limitation that such increase in millage as voted shall not exceed 15 mills over that otherwise authorized by law.

Section 40 clearly prescribes a method and manner of conducting an election for the purpose of voting upon an excess levy, but contains no express requirement of vote upon a levy not designated as an excess levy. It is noted that in provisions designating 5 mills as a basis of calculation of excess levy requirements, and in basis of the number of excess mills to be voted on, there is no express reference to a limitation on such excess or on the total levy for school purposes. It is provided an election may be called by the school board to be held in March at the same time the general school election is held, and it is provided that the county excise board of the school board may call a special election for the purpose of voting upon an excess levy if the estimate of needs as submitted by law requires a greater levy than authorized by law within the limitations fixed by the Constitution. There is no provision as to the time of such special election.

Under these provisions an election for the purpose of voting upon an excess levy may be called at a time when, in virtue of legislative apportionment of millage, a five-mill levy is authorized within the limitations fixed by the Constitution without voters' sanction. Also, such an election for the purpose of voting upon an excess levy may be called at a time when the county excise board has so acted that more than a 5 mills levy is within the limitations authorized by the Constitution without the voters' sanction. In this effect it seems apparent that 5 mills was designated in section 40 as the minimum basis of calculation of amount of additional levy as requiring voter sanction, and not in purpose of fixing limitations on the total levy or on the additional 15 mills levy as authorized by the Constitution on condition of election results.

The provisions of the Constitution that annual tax rate for school purposes may be increased by amount not to exceed 15 mills on condition of majority vote at a school district election clearly refers to and contemplates a 15-mill maximum over and above such millage as may be apportioned to the school district from the 15 mills authorized for apportionment between county, city, town and school district. It is also provided "that the Legislature shall by proper laws prescribe the manner and method of conducting said election," and further, "that limitations on the levy of such additional 15-mill levy may be made hereafter by the Legislature."

We think it apparent that section 40, supra, was enacted in response to constitutional mandate to provide for school district elections for the purpose of voting upon an excess levy within the limits of that authorized in the Constitution, and we find no language in said section 40 expressing an intent or purpose to limit the amount of such additional levy as authorized in the Constitution and as finds approval in such election.

Under conditions of millage apportionment and election as are in accord with the constitutional and statutory provisions, supra, a tax levy of 21 mills for school purposes may result and not be in excess of that authorized by law.

The levy here involved was not in excess of that authorized by law, under the apportionment of 6 mills and election approving 15 mills excess levy.

Protestant contends the allocation by the county excise board of 6 mills to Independent District No. 1, since 5 mills were allocated to all other districts in the county, was special legislation in violation of section 59, article 5, of the State Constitution.

Section 59, art. 5, of the Constitution provides:

"Laws of a general nature shall have a uniform operation throughout the

State, and where a general law can be made applicable, no special law shall be enacted."

Reference is also made to section 5, art. 10 of the Constitution, which provides for uniformity of taxation.

We do not perceive that an order of a county excise board in apportionment of millage is a law, or an act, within the purview of the constitutional provisions governing the enactments of the Legislature. Article 10, sec. 9 of the Constitution provides a limit of ad valorem tax levy of 15 mills on the dollar to be apportioned between county, city and school districts, and leaves to the county excise board the duty of making the apportionment until the Legislature shall provide apportionment. In serving as the agency of the state designated by the Constitution to bring about the result pointed out in the Constitution, the excise board acts in the performance of a ministerial duty. In the performance of such duty, whether its acts be characterized as an exercise of legislative power or judicial power, the county excise board is vested with full discretion limited only in that in the result there be no infringement of the rights of the citizen as defined in statute and guaranteed under the Constitution.

The effect of the constitutional provision inhibiting special laws and providing laws shall have uniform operation is to secure equal protection of the law and of like effect is the provision for uniformity of taxation.

Herein in subdivision of the county in separate tax areas for apportionment of millage, and in the apportionment so made, the property in one area was not subjected to a greater or lesser tax levy than if located in the other area, and the property owners were afforded equal protection under the law.

The judgment of the Court of Tax Review is affirmed.

ARNOLD, C. J., LUTTRELL, V. C. J., and DAVISON, HALLEY, JOHNSON, and O'NEAL, JJ., concur.